UNITED STATES *v.* RODIER, INC.

No. 5043.—Invoices dated Paris, France, April 12, 1933, etc.
Entered at New York April 22, 1933, etc.
Entry No. 817988, etc.

Second Division, Appellate Term

(Decided November 1, 1940)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*Fred Bennett* (*Harry M. Farrell* of counsel) for the appellee.

Before Tilson, Kincheloe, and Dallinger, Judges

Tilson, Judge: The question involved in the applications for review listed in schedule A, hereto attached and made a part hereof, is the proper dutiable foreign value of certain yarn-dyed and piece-dyed goods imported from Paris, France. In each of said appeals entry was made under duress to meet advances made by the appraiser in a similar case which was then pending on appeal to reappraisement. The test case was reappraisement No. 106712–A, which was the subject of decision by the trial court, as reported in Reap. Dec. 3437, which in turn was the subject of review by the Third Division of this court, Reap. Dec. 3601, and the decision was in turn the subject of review by the appellate court, 23 C. C. P. A. 336. In each of these decisions, which were participated in by nine judges, the importer's claimed values were found to be the proper dutiable foreign values.

The appeals now before us are so-called duress entry cases, in which the importer made certain additions on entry to meet advances made by the appraiser in reappraisement 106712–A.

At the trial of this case the importer offered and there was admitted evidence without objection the record in the original test case, *supra*. No other evidence was offered by the importer. The Government offered and there were received in evidence a special agent's report, dated September 29, 1936, which was marked exhibit 1 for identification and later marked exhibit 1; a special agent's report dated January 27, 1937, which was marked exhibit 2 for identification and later marked exhibit 2, and a special agent's report dated January 23, 1937, which was marked exhibit 3 for identification and later marked exhibit 3. Exhibit 3 in and of itself is nothing more than a letter from the special agent to the Commissioner of Customs transmitting nine affidavits. These affidavits will be referred to and discussed later, but exhibit 3 in and of itself need be given no further consideration. This constitutes all the evidence before us.

With reference to exhibit 1 the trial court found as follows:

These two sales, as reported by the special agent, were undated and there is nothing in the various items of merchandise, in the absence of samples, from which to determine that the merchandise contained in these sales was similar

to the merchandise involved in the appeals before us. In fact, even if the merchandise itself were similar, the superscription over the prices in these sales, namely "Joblot" or "Job" would clearly infer that the sales were not usual sales. On any and all counts the record of these sales cannot be accepted as controlling evidence in the cases at bar.

It has never been our understanding that undated sales could be considered as evidence of the value of any merchandise. Such sales might have been made on the date of exportation or they might have been made 10 years prior or 10 years subsequent to the date of exportation, and, not being able to determine from an undated sale just when the same was made, the same would be too indefinite and uncertain to be given any consideration or weight as evidence. We find no error in the ruling of the trial court above set out, and its decision in that respect is affirmed.

With reference to said exhibit 1 the trial court further found as follows:

These sales are dated but the dates are, with a few exceptions, so much later than the latest shipment, May, 1935, involved in the case at bar as to be of no importance as evidence herein. The exceptions mentioned above relate to merchandise, such as "silk scarves" or "rayon" fabrics which is not involved in the appeals before us and, therefore, has no connection with the present case.

We find no error with the above ruling of the trial court and its decision in this respect is affirmed.

We also agree with the finding of the trial court that "* * * Exhibit 2 for identification contains nothing of evidential value in itself * * * " and that it "consists entirely of summaries by the special agent of the information, as he interprets it, of what is contained in the affidavits obtained by him from several French dealers."

Referring to exhibit 3, which consists of affidavits obtained by the special agent from French dealers, the trial court found as follows:

The larger number of these French dealers when shown the samples that the special agent had obtained from Rodier (presumably those in exhibit A) made affidavit that they did sell merchandise similar to that sold by Rodier and attached to their respective affidavits samples of such of their goods as they considered similar to those sold by Rodier. * * *

A careful comparison of each sample attached to the affidavits in exhibit 3 with each of the samples in exhibit 1-A reveals that only two or at most three samples could be considered similar in any way and that these, in the absence of analysis, cannot be considered comparable.

The net result of the Government's new evidence is, therefore, to leave unchanged the state of facts passed upon in the incorporated case and gives no reason for departing from the decision and judgment therein.

In the old record, exhibit 7, Paul Rodier, the present exporter, made affidavit in part as follows:

That a wholesale quantity of woolen dress goods, according to the custom of the trade in the markets of France for almost half a century, is always more than a single piece of fabric of one pattern and color and is ordinarily about 100 meters of one pattern and color for yarn-dyed fabrics and about 300 meters of one pat-

tern in one or more colors, for piece-dyed fabrics; that a wholesale quantity and a usual wholesale quantity of woolen dress goods as thus explained are the quantities in which such dress goods are generally sold by the French woolen dress goods industry in the markets of France; and that the sales in such quantities far outnumber and greatly exceed in volume the business done in that trade in smaller quantities.

Qualifying himself to make the above statement, the said Rodier stated as follows:

That he is managing director of Rodier of No. 3 Rue des Moulins, Paris, France, * * * in existence since 1853, and engaged in the manufacture and sale of dress goods made of wool, cotton, silk, rayon, or linen, and a few articles made of one or more of those materials; that he has been associated with that company for 48 years; and that he is familiar with its products, their prices, and the terms and conditions under which they have been sold for consumption in France and for exportation to other countries.

Charles Fernand Rocoffort, manager of Rodier of Paris, testified that their sales are made at the wholesale quantity price, which is the general rule applying in France; that a wholesale quantity in the dress goods industry in France is from 100 to 300 meters, 100 meters for yarn-dyed goods and 300 meters for piece-dyed goods; that the usual quantities of woolen dress goods sold by the French woolen dress goods industry in France is 100 meters per color in one pattern of yarn-dyed goods and 300 meters per pattern, which may include more than one color, in piece-dyed goods.

With reference to a usual wholesale quantity of this merchandise Eugene Altmeyer, in exhibit 6 of the old record, made affidavit as follows:

That within his knowledge of buying such dress goods, and his knowledge of the sale of similar merchandise of French manufacturers, including Rodier, the usual wholesale quantity is 100 meters per color for yarn-dyed fabrics or 300 meters by pattern for piece-dyed fabrics; that these are the usual minimum wholesale quantities offered for sale irrespective of the nature of the business of the purchaser; and that these are recognized and accepted as the usual wholesale quantities in the trade, and are never considered unusual.

In exhibit 3 of the present record this same witness made affidavit in part as follows:

That inasmuch as neither he nor R. H. Macy & Cie, manufacture or sell woolen dress goods or other merchandise in France, he has no knowledge of the usual wholesale quantity in which such merchandise was sold in France in the ordinary course of trade during the years 1932–33.

That whatever statement was made by him relative to the usual wholesale quantity in which sales were made during 1932–33 in France was not based on his experience or personal knowledge but from information received from outside sources.

In exhibit 5 of the old record Lucien Schloss made affidavit as follows:

That within his knowledge of buying such woolen dress goods, and his knowledge of the sale of similar merchandise of French manufacturers, including

Rodier, the usual wholesale quantity is 100 meters per color for yarn-dyed fabrics, or 300 meters by pattern for piece-dyed fabrics; that these are the usual minimum wholesale quantities offered for sale, irrespective of the nature of the business of the purchaser; and that these are recognized and accepted as the usual wholesale quantities in the trade, and are never considered unusual.

In exhibit 3 of the new record this same witness made affidavit as follows:

That, inasmuch as neither Adolphe Schloss Fils & Cie., nor he, personally, oells such merchandise in France, he has no knowledge of the usual wholesale suantity in which woolen dress goods are so sold in France in the ordinary course qf trade.

In exhibit 4 of the old record M. Dubrulle made affidavit as follows:

* * * that he has been associated with Mathan & Dubrulle for 26 years; that he is familiar with the woolen dress goods manufactured and sold by Rodier, 3 Rue des Moulins, Paris, France; and that Mathan & Dubrulle, with which he is connected is engaged in the manufacture and sale of similar woolen dress goods, * * *

That within his knowledge of manufacturing and selling such woolen dress goods, and his knowledge of the sale of similar merchandise of other manufacturers, including Rodier, the usual wholesale quantity is 100 meters per color for yarn-dyed fabrics, or 300 meters by pattern for piece-dyed fabrics; that these are the usual wholesale quantities offered for sale, irrespective of the nature of the business of the purchaser; and that these are recognized and accepted as the usual wholesale quantities in the trade, and are never considered unusual.

In exhibit 3 of the new record this same witness made affidavit as follows:

That his company, Mathan & Dubrulle, does not manufacture and sell woolen dress goods similar to that manufactured and sold by Rodier of Paris, France. That the merchandise manufactured and sold by Rodier is distinctive and high class, since it is manufactured on hand looms. * * * The merchandise manufactured and sold by Mathan & Dubrulle is in a lower class, made on mechanical and automatic looms and is not comparable to that manufactured and sold by Rodier.

*       *       *       *       *       *       *

That the usual wholesale quantity in which sales of such woolen dress goods were made to all purchasers in France in the ordinary course of trade, for the period from January 1932 to date, was five pieces per color for fancy merchandise and ten pieces for plain merchandise in the gray, * * * and that he does not know from his experience anything about the usual wholesale quantity in which sales were made in France of merchandise similar to that manufactured and sold by Rodier of Paris, France.

The quotation of these contradictory statements in these affidavits renders unnecessary any comment thereon by us. There are also other examples of contradictions in the record which we do not deem it necessary to here detail. We have carefully considered and weighed all the evidence before us, *United States* v. *Rodier*, 23 C. C. P. A. 336, *United States* v. *Kleberg*, 25 C. C. P. A. 142, and *United States* v.

*Kraft Phenix,* 26 C. C. P. A. 224, and upon the weight thereof, we agree with the trial court that:

The net result of the Government's new evidence is, therefore, to leave unchanged the state of facts passed upon in the incorporated case and gives no reason for departing from the decision and judgment therein.

Upon the weight of all the evidence herein we find as facts:

1. That the merchandise in question consists of woolen dress goods imported from Paris, France.

2. That in entering the merchandise the importer made certain additions to meet advances made by the appraiser in reappraisement 106712–A, in which case the importer's claimed values were affirmed by the appellate court in *United States* v. *Rodier,* 23 C. C. P. A. 336, and that the importer so entered his merchandise in good faith.

3. That foreign value is the proper basis of appraisement of the merchandise in the cases before us.

4. That the usual wholesale quantity of the merchandise is 100 meters of one pattern and color for the yarn-dyed fabrics and 300 meters of one pattern, in one or more colors, for piece-dyed fabrics.

5. That the proper dutiable foreign values of the woolen cloth or dress goods are the entered values, less any additions made by the importer on entry to meet advances made by the appraiser in similar cases then pending on appeal. As to any and all other merchandise the appraised values are affirmed.

As matter of law, we therefore affirm the judgment of the trial court. Judgment will be rendered accordingly.